UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON R.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Case No. 3:23-cv-05491-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 4. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 1, Complaint.

A. Procedural History

Plaintiff filed his application for DIB on September 23, 2016. AR 15, 158–61. His alleged date of disability onset is July 25, 2016. *Id.*; AR 914. His date last insured, for the purposes of his DIB eligibility, was December 31, 2021. AR 16, 914.

After his application was denied initially and upon reconsideration (AR 73, 84–86), his requested hearing was held before ALJ Marilyn S. Mauer in May 2018. AR 32–72. ALJ Mauer issued a decision finding plaintiff not disabled in September 2018. AR

1

12–31. The Appeals Council denied review on April 21, 2020. AR 1–5. Plaintiff appealed to this Court. AR 1003–04.

In May 2021, United States Magistrate Judge Mary A. Theiler reversed the ALJ's decision pursuant to a stipulated motion for an order reversing and remanding for additional proceedings. AR 1005–11. The Appeals Council remanded, on June 16, 2021, to the Administrative Law Judge for further administrative proceedings including a new hearing before a different ALJ, and specifically directed the ALJ to review a medical source statement by Dr. Jeffery Smith, MD, dated December 19, 2016. AR 1014–15.

On remand, ALJ Malcolm Ross (the ALJ) held hearings on January 27, 2022 (AR 909–46), and July 14, 2022 (AR 947–76). The ALJ issued a decision on February 1, 2023, finding plaintiff not disabled. AR 842–871.[1]

The ALJ found plaintiff had the following severe impairments: diabetes mellitus; diabetic neuropathy; diabetic foot ulcers; status post-amputation of left big toe; status post-double coronary bypass surgery on November 11, 2019; peripheral artery disease; hypertension; bilateral shoulder abnormalities; and obesity. AR 848.

The ALJ posed hypothetical questions to the Vocational Expert (VE) (AR 939–46) and found plaintiff had the Residual Functional Capacity (RFC) to perform light work with the following additional limitations:

> four hours standing/walking; six hours sitting; occasional operation of foot controls; occasional climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; occasional bilateral overhead reaching; frequent bilateral handling, fingering and

---

[1] The record contains two decisions issued by ALJ Ross: a decision dated February 1, 2023 (AR 842–71), and a decision issued one day earlier which includes an "Amended Notice of Decision" (AR 872–901). Plaintiff cites the latter decision while Defendant cites the former. *See* Dkts. 11, 15. Other than the inclusion of the amended notice in the January 31st decision, the decisions are identical. All record citations to the ALJ's decision in this opinion are to the decision issued on February 1, 2023.

feeling; and frequent exposure to extreme cold and hazards such as unprotected heights and dangerous machinery.

AR 849. Based on the VE's testimony, the ALJ found that, given these restrictions, plaintiff could not perform his past relevant work but could work, instead, as a marker, router, or routing clerk. AR 863.

B. Analysis

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014).

Where the evidence would reasonably support affirming, or reversing, the decision of the ALJ, the Court may not substitute its judgment for the Commissioner's. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The Court must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review.

**1. Plaintiff's statements regarding symptoms and limitations**

Plaintiff argues the ALJ failed to adequately evaluate his subjective testimony. *See* Dkt. 11 at 14–17.

3

Plaintiff testified that he had previously worked for many years in warehouses, and as a delivery person, and he often was required to lift 25 to 75 pounds in those jobs. AR 916–21. In 2016, he had an ulcer of the big toe on his right foot that continued to grow and required more than a year for the open wound to close. AR 923. The open wound was still growing at the end of 2016 and worsened in February and March of 2017. AR 923–24. He used a knee scooter for several months until approximately August 2017; he started wearing diabetic shoes in November 2017. AR 925. Even after the open wound closed, skin was fragile and tender – he often used a protective boot – and "offloading" which is somewhat like a cast on his foot, for ambulation. AR 924–26.

Since the end of 2017, when the right toe ulcer initially closed, he has had continued issues: he testified he had other episodes in 2018 and 2019 with ulcers; and he stated it seemed like every year at least once or twice he had ulcers ("an open wound . . . you can actually see the meat . . . a dime, nickel size") in the same area of his right foot; he stated that often he was unable to walk because he needed to elevate his feet. AR 926–28. Each time the ulcer happened, it would normally take five or six months to close again. AR 927. This would require sitting stationary and raising his foot up to keep it elevated due to swelling. AR 927–28. He stated that he continues to require raising each of his legs and offloading his feet so that his legs will not swell up, and this had been happening for five or six years leading up to the date of the hearing. AR 936–37.

Plaintiff testified that, in September of 2021, he did not have much sensation in his feet but felt something was not right, after walking his dog for approximately 1000 - 1500 steps. AR 928. He was using a hospital boot while walking. AR 929. Plaintiff

stated that he, "went home and I took off my shoes and I had ulcers on my big right toe and my big left toe." AR 928. The left toe was ultimately amputated two months later. AR 928–29. He continues to use a scooter, power cart, or hospital boot if he needs to ambulate. AR 929, 936. He testified that, since his 2016 ulcer of the big toe on his right foot, to prevent further ulceration he has stayed in his room most of the time and avoided using stairs. AR 932. He stated, "I'm relegated to my room . . . [i]t seems like I'm dying . . . I don't know how to battle it or how to make it better." AR 937.

He had osteomyelitis, and cellulitis, where his "leg exploded and turned all red . . . getting infected and going up my leg . . . "AR 930–31. Regarding ongoing osteomyelitis, plaintiff testified that he is required to elevate his leg and offload it, and he had been receiving IV treatment at the hospital off and on for the four years leading up to the date of the hearing. AR 931. He stated that if he were to "lift something and twist or if I put too much pressure, I could get ulcers again." AR 931. He also stated that, because of limitations on movement, and because he wants to avoid a nick on the leg or a sore, for the past five years it has been too hazardous to go up and down the stairs – when he absolutely must do so, he "hugs the wall" for support. AR 932. And he cannot sit for more than 15 or 20 minutes at once, because his left leg goes numb and if he sits then his legs begin to swell up. AR 935.

Plaintiff also testified that he has had several other recurring issues during the relevant period. For the past five or six years, plaintiff has had a limited ability to move his right shoulder. AR 933. He cannot raise his arm above his neck; he has no strength in the shoulder and no movement. AR 933. He cannot use his arms and hands for lifting and needs assistance to twist jars open. AR 934. He has no strength in his hands,

sometimes he can pick up small things but often drops things when he picks them up.
AR 934. He has periodic blood clots which cause "severe pain" in his left leg. AR 935.
He stated that for the six months leading up to the hearing, he spends 22 out of 24
hours in his room, he needs to lie down and keep his leg up for several hours per day.
AR 936.

The ALJ's determinations regarding a claimant's statements about limitations
"must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722
(9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In
assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented
objective medical evidence of an underlying impairment. If, as is the case here, such
evidence is present and there is no evidence of malingering, "the ALJ can reject
[plaintiff's] testimony about the severity of [his] symptoms only by offering specific, clear,
and convincing reasons," unless there is evidence of malingering. *Garrison*, 759 F.3d at
1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific
to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony
on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding
pain.'" *Brown-Hunter v. Colvin*, 804 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v.
Sullivan*, 947 F.2d 341, 345–46 (9th Cir.1991)). "The ALJ must state specifically which
symptom testimony is not credible and which facts in the record lead to that
conclusion." *Smolen*, 80 F.3d at 1284. And the ALJ must "set forth the reasoning behind
[his] decisions in a way that allows for meaningful review." *Brown-Hunter*, 804 F.3d at
492.

a. Treatment Non-Compliance

The ALJ discounted plaintiff's symptom testimony because plaintiff had "periods of treatment non-compliance such as not taking his medications as prescribed [and] not following up on recommendations." AR 858. The ALJ similarly noted that plaintiff "did not take his insulin as prescribed." *Id.*

An ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But an ALJ may "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons [they] may not comply with treatment or seek treatment consistent with the degree of [their] complaints." SSR 16-3p; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, there were legitimate explanations for plaintiff's purported lapses in treatment, which the ALJ failed to consider. With respect to plaintiff's purported failure to take medications or take his insulin, evidence suggested this was due to problems with insurance coverage. *See* AR 285 ("[Plaintiff] has been out of meds since August first because he was without insurance."); 1485 ("Runs out of [diabetic insulin] for 1 week every month due to insurance issues.").

With respect to his failure to follow up on treatment recommendations, the ALJ relied on evidence that, from April 2016 through May 2017, plaintiff had failed to seek treatment with a podiatrist or endocrinologist despite referrals for doing so. *See* AR 858. Yet, evidence from this period suggested plaintiff was having difficulties scheduling appointments – plaintiff was attempting to continue working despite the symptoms of his

conditions and, due to his work schedule and that plaintiff had insurance problems which may have interfered, there were periods when treatment was interrupted. *See* AR 597 (note from Nurse Mortimer dated 7-11-2016, "[plaintiff] has been unable to schedule [appointments in the spring of 2016 with ophthalmology and dentistry] due to having to take all his time off of work to address the wound on his leg."); 369 (Dr. Atif Mian notes on 10-14-2016, that podiatrist would not accept plaintiff's insurance).

The ALJ also noted that plaintiff "did not use prescribed compression socks or follow-up with vascular surgery when his ABI was abnormal." AR 858 (citing AR 1522– 23, 1526–27). With respect to plaintiff's use of compression socks, the evidence cited by the ALJ showed that plaintiff was, at the time of the treatment notes, still trying to attain compression socks. AR 1526 ("he is trying to obtain compression socks"), 1527 (prescribing compression socks).

With respect to plaintiff's failure to follow up with vascular surgery, the evidence cited by the ALJ indicated surgical follow up might have been necessary after his September 2021 injury but did not suggest plaintiff failed to heed this advice. *See* AR 1523 ("patient should get a follow-up with vascular surgery if possible for any treatment planning required."). Defendant cites, for the proposition that plaintiff failed to obtain surgical follow-up, evidence related to plaintiff's June 2017 surgery. *See* Dkt. 15 at 5 (citing AR 1530–31). That evidence showed plaintiff requested a follow-up appointment be moved back one or two days because of his daughter's graduation (AR 1531) but it was ultimately moved back one week due to his provider's availability (AR 1530–31). At the very least, the ALJ was required to consider this explanation for failing to follow up after his surgery.

1      In sum, the ALJ erred by not considering legitimate explanations for plaintiff's

2 purported treatment non-compliance.

3      b.  Activities of Daily Living

4      The ALJ also discounted plaintiff's testimony because plaintiff went on walks,

5 which, according to the ALJ, was inconsistent with his testimony that he had difficulties

6 walking. AR 858 (citing AR 1393, 1420, 1437, 1485). An ALJ may discount a claimant's

7 testimony based on daily activities that either contradict their testimony or that meet the

8 threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

9      Here, plaintiff testified that walking was hazardous, due to recurring ulcers (AR

10 926), but did not indicate he was completely unable to walk during the relevant period.

11 The ALJ cited to evidence showing plaintiff walked during a period from 2019 through

12 early 2021. *See* AR 1495 (February 2019: "walking daily for 1 mile (takes about half an

13 hour to walk."), AR 1437 (January 2020: "able to now walk up stairs. Did 45 minutes on

14 the treadmill today."); AR 1420 (September 2020: "He is . . . walking every day"); AR

15 1393 (April 2021: "he is walking").

16      The ALJ failed to explain, in a manner which "allows for meaningful review,"

17 *Brown-Hunter*, 804 F.3d at 492, why plaintiff's walking activities were inconsistent with

18 plaintiff's testimony. Plaintiff testified he had difficulties walking but did not testify he was

19 completely unable to walk from 2019 through early 2021. *See* AR 926. Additionally,

20 medical evidence (not addressed by the ALJ) suggests plaintiff still had pain and was

21 being treated for ulcers on his feet, during the time he continued to attempt walking,

22 suggesting plaintiff's walking activities were not inconsistent with his claims of difficulties

23 with walking. *See e.g.*, AR 1524 (July 2021: "[H]e currently is having a very heavy

24

25

weighted down feeling to both of his feet and lower legs whenever he is active for a short period of time. He relates he consistently starts to feel this feeling after about ½ mile of walking."). It is error for the ALJ to selectively consider treatment records in their decision and cherry-pick the items that support the finding of non-disability. *Ghanim v. Colvin,* 763 F.3d at 1164. The ALJ erred by failing to consider this evidence of plaintiff's difficulties with ambulation.

c.   Inconsistency with Medical Evidence

The ALJ noted that plaintiff "testified that he has had three or four episodes with ulcers since the end of 2017" but "the medical evidence shows from July 2017 to September 2021 that the claimant did not have any ulcerations." AR 858 (citing AR 1512–33). However, an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991).

The evidence relied upon by the ALJ included only four treatment notes from July 2017 to September 2021; yet the record shows continued symptoms from ulcerations. *See e.g.*, 1525 (in September 2020, "extremely high risk of reulceration"); 1528 (in June 2018, "significant edema to his lower legs after being on his feet for about 30 minutes," and "patient would require a sitting job, with only occasional walking [less than 30 min per hour] if possible", and "patient is at an extremely high risk of reulceration given the color changes and thinness of skin to the prior ulceration site"); 1529 (Dr. Neitzel notes in June 2017 "swelling may have increased"); 1535–46 (plaintiff reports foot and leg pain during November of 2021 – ulcer appears to be infected and Dr. Neitzel notes that he may need to go to the hospital).

Defendant also points to the ALJ's summary of the medical evidence and argues "the ALJ outlined that from 2018 through 2021 plaintiff has yearly podiatry care with improvement and treatment simply consist[ing] of yearly prescriptions for compression socks, diabetic shoes, and inserts." Dkt. 15 at 5. The ALJ pointed out, in summarizing the medical evidence, some treatment notes indicating plaintiff's condition had improved. *See* AR 852–53. But "some improvement" in a person's symptoms "does not mean that the person's impairments no longer seriously affect [their] ability to function in a workplace." *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). The ALJ did not find plaintiff's impairments had improved such that they would no longer affect his ability to function. *See* AR 852–55.

With respect to the period following plaintiff's 2021 amputation, defendant argues "the ALJ highlighted inconsistencies in the medical evidence following amputation." Dkt. 15 at 6. Defendant asserts one inconsistency: that plaintiff testified he used a scooter for walking, while other treatment notes indicated he walked without difficulty. *Id.* (citing AR 856–58, 1393–94, 1420, 1437, 1485, 1512–33, 1678). Yet, all but one of the treatment notes cited by defendant for the proposition that plaintiff indicated he ambulated without difficulty occurred *prior* to his December 2021 amputation of the big toe on his left foot. *See* AR 1493–94 (April 2021), 1420 (September 2020), 1437 (January 2020), 1485 (February 2019).

The only note cited by defendant pertaining to treatment *after* plaintiff's toe amputation indicated plaintiff was from the emergency room at Allenmore Hospital, on December 22, 2021, and the treatment provider states: "ambulating without difficulty and without pain" but also indicated plaintiff had mild join pain to the site of the

1   amputation, left leg pain similar to a constant muscle spasm in his anterior thigh, he

2   contacted his podiatrist and was told to go to the emergency room, and earlier in the

3   week he needed a knee scooter when going to the store. *See* AR 1678–90. An

4   observation in the limited circumstance of a single examination that plaintiff was

5   ambulating unassisted is not necessarily inconsistent with plaintiff having difficulties

6   walking. And the treatment note said plaintiff's leg pain was related to post-operative

7   care – body mechanics associated with wearing the specialized shoe – and that plaintiff

8   had been using a scooter, which is consistent with plaintiff's testimony that he often

9   used a scooter for walking during this period. AR 1678, 1681, 1687.

10          Moreover, the reasons given by the ALJ for discounting plaintiff's subjective

11   testimony also fail for lack of specificity. The ALJ does not describe why any of the

12   inconsistencies he identified detract from the other recurring issues plaintiff identified

13   during the relevant period, such as his limitations in sitting for prolonged periods or in

14   performing bilateral reaching. For example, the medical record shows that plaintiff had

15   shoulder pain, limited range of motion, and limitations with bilateral reaching, in

16   November 2018, and was in treatment for those conditions. AR 2333 (treatment notes

17   dated 11-15-2018 regarding bilateral frozen shoulder, by Dr. Spencer Coray, MD). The

18   ALJ therefore failed to give specific reasons for failing to credit this part of plaintiff's

19   testimony, as he was required to do. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

20   Cir. 1996); *Brown-Hunter v. Colvin*, 804 F.3d 487, 493 (9th Cir. 2015).

21          The Court finds that the ALJ did not give specific, clear, and convincing reasons,

22   supported by substantial evidence, to reject plaintiff's testimony about symptoms and

23   limitations.

24

25                                              12

d.  Harmless Error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id*. Here, plaintiff's subjective testimony evidence showed several limitations not included in the RFC: plaintiff testified he could not use his right shoulder, while the RFC permitted occasional bilateral overhead reaching; he testified his hands were numb and he could not reliably use his fingers to open or grip, while the RFC assumes he can work in a position that requires fingering; he testified he had difficulties sitting for more than 15 minutes at a time because his legs would swell and he needed to elevate his feet – there is a sitting limitation of six hours in the RFC; and he testified he had difficulties standing and walking, which is inconsistent with the RFC's allowance of four hours of standing or walking per day. The RFC contains limitations that do not account for the severity of symptoms and the full extent of work-related limitations described in plaintiff's testimony. Thus, the ALJ's erroneous evaluation of plaintiff's subjective testimony was not harmless error.

**2.  Medical evidence.**

Plaintiff argues the ALJ erred in addressing the medical opinions of Jeffrey Smith, MD, and Kimberly Sales, ARNP; Emily Robinson, ARNP; Sarah Neitzel, DPM; Raheela Sadiq, MD; William Biles, MD; Wil Nelp, MD; and two state agency consultants. *See* Dkt. 11 at 3–14.

After discussing the medical evidence in the record from 2016 through the date of the decision, the ALJ found that plaintiff would have the following residual functional capacity – he would be able to work in an occupation that required:

> four hours standing/walking; six hours sitting; occasional operation of foot controls; occasional climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; occasional bilateral overhead reaching; frequent bilateral handling, fingering and feeling; and frequent exposure to extreme cold and hazards such as unprotected heights and dangerous machinery.

Plaintiff filed his application prior to March 27, 2017, and therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of a treating or examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of a treating or examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

   a.  Jeffrey Smith, MD, and Kimberly Sales, ARNP

Treating providers Dr. Smith and ARNP Sales submitted a joint opinion in January 2017. AR 621–24. They opined plaintiff could stand for one hour intermittently, could walk for less than one hour at a time, and could not push or pull bilaterally. AR 622.

The ALJ gave the opinion "little weight" because it was "inconsistent with the longitudinal record, unexplained, inadequately supported, and brief and conclusory." AR 860 (citations omitted). The ALJ did not explain this statement any further. "[A]n ALJ

14

errs when he rejects a medical opinion . . . while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin,* 759 F.3d 995, 1012–13 (9th Cir. 2014). The ALJ so erred here.

With respect to the ALJ's contention that the opinion was inconsistent with the record, the ALJ's summary of the medical evidence contains few findings which can reasonably be imported to the ALJ's opinion regarding these medical professionals. The decision did not discuss plaintiff's capacity for standing. *See* AR 850–56. The decision discussed plaintiff's ability to walk, noting that some treatment notes indicated he could ambulate without pain or difficulty and that he had reported to providers that he was walking for exercise. *See id.* But as discussed above, the ALJ failed to explain how either the activities or treatment notes in question were inconsistent with limitations related to walking.

The decision similarly did not discuss plaintiff's abilities to push or pull. AR 850–56. It did broadly discuss plaintiff's "musculoskeletal concerns," noting that several treatment notes indicated he had bilateral shoulder pain and reduced range of motion, but that "physical therapy notes document good progress." AR 856 (citing AR 824–25). But the physical therapy notes in question show plaintiff continued to have a limited range of motion. *See* AR 824 ("still limited" in "overhead ranges," "limited with reaching and lifting"), 825 (same). Thus, the ALJ did not adequately explain how the opinion was inconsistent with the record and, to the extent the ALJ found bilateral pushing and pulling limitations inconsistent with plaintiff's physical therapy progress, such a finding was not supported by substantial evidence.

1

2

3

4

5

6

7

8

     With respect to the ALJ's contention that the opinion was unexplained, not supported, and brief and conclusory, although this is a valid reason to discount an opinion, the ALJ must consider the opinion in the context of the remainder of the medical evidence put forth by the opinion's authors. *See Garrison*, 759 F.3d at 1014 n.17. Here, there was ample evidence from ARNP Sales' treatment notes which supported and explained her opinion: she consistently noted plaintiff's diabetic foot ulcer (*e.g.*, AR 284, 293, 510, 733, 746, 770) and noted plaintiff "need[ed] to stay off his feet" in a January 2017 appointment (AR 504), for example.

9

10

11

12

13

     The ALJ also noted that he "g[a]ve greater weight to [non-examining medical advisor] Dr. Biles as he was able to review all of the evidence, including evidence arising after this opinion." AR 860. However, a "nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . [a] treating doctor's" opinion. *Lester*, 81 F.3d at 832.

14

15

16

17

     Thus, the ALJ failed to give specific and legitimate reasons for discounting the joint opinion of Dr. Smith and ARNP Sales. The limitations opined by Dr. Smith and ARNP Sales—one hour of standing and walking and no bilateral reaching—were not included in the RFC, and thus this error was not harmless. *Stout*, 454 F.3d at 1054.

18

     b.  Sarah Neitzel, DPM

19

20

21

22

     Treating podiatrist Dr. Neitzel authored opinions from 2017, 2018, and 2020. The first was an opinion from May 2017. AR 416–21. She opined plaintiff could not stand or walk for more than three hours at a time or over the course of the workday because of his "chronic ulcer to major weight bearing joint in foot." AR 417. She opined plaintiff

23

24

25

1  could never climb stairs or ladders because of plaintiff's "chronic ulcer to major load

2  bearing joint to right foot [with] minimal effort or pressure." AR 419.

3          In June 2018, Dr. Neitzel opined plaintiff "would require a sitting job, with only

4  occasional walking (less than 30 min per hour) if possible." AR 1528. She explained

5  elsewhere in the same opinion that plaintiff was "at an extremely high risk of

6  reulceration . . . when on his foot for more than 30 [minutes] every hour." *Id.*

7          In September 2020, Dr. Neitzel opined that "with [plaintiff's history] of foot

8  ulcerations, he is unable to do work that requires a lot of time spent on his feet, however

9  a sedentary job is unlikely to be adequate for his heart health." AR 1525. She said that

10  plaintiff "is at an extremely high risk of reulceration." AR 1525.

11          The ALJ gave "some weight" to these opinions. AR 860. With respect to Dr.

12  Neitzel's May 2017 opinion, the ALJ explained that Dr. Neitzel "did not consider

13  shoulder impairments and she completed this form when [plaintiff's] foot ulcer was not

14  yet fully healed, and he was still wearing a weight-off-loading boot." AR 860. The ALJ

15  failed to explain why Dr. Neitzel's failure – as a podiatrist, specializing in feet – to

16  consider plaintiff's shoulder impairments would detract from the validity of her opined

17  limitations related to plaintiff's abilities to stand, walk, and climb. And even though

18  plaintiff's 2016 ulcer had not healed at the time of the opinion, Dr. Neitzel's opinion was

19  based on the chronic nature of plaintiff's foot ulcer. For this reason, without further

20  explanation from the ALJ, it is unclear how the status of the ulcer unhealed would

21  provide substantial evidence upon which the ALJ would find it undermined Dr. Neitzel's

22  opinion.

23

24

25
                                                17

1    The ALJ also discounted Dr. Neitzel's opinion because she had only treated

2    plaintiff for three months, "rendering her opinions somewhat less convincing than" those

3    of Drs. Nelp and Biles. AR 861. Although this is a factor which the ALJ may consider,

4    *see* 20 C.F.R. § 404.1527(b)(2)(i)–(ii), it does not by itself justify the ALJ's decision

5    giving no deference to Dr. Neitzel's opinion – particularly in a situation where plaintiff

6    was later treated by the same doctor and that doctor provided additional medical

7    opinions. *See Revels*, 874 F.3d at 664.

8        With respect to the June 2018 and September 2020 opinions, the ALJ said that

9    the "opinions are inconsistent with [Dr. Neitzel's] own treatment notes which showed no

10   ulcerations until September 2021." AR 861. But Dr. Neitzel did not opine plaintiff was

11   limited due to ongoing open wounds. *See* AR 1525, 1528. Rather, she opined

12   prophylactic limitations were critical, for plaintiff to avoid new ulcers.[2] *See id.*

13       The ALJ failed to state specific and legitimate reasons for rejecting Dr. Neitzel's

14   June 2018 and September 2020 opinions. Dr. Neitzel's opinions span 2017 through

15   2021, and show that plaintiff's chronic ulcers, along with infections, caused him to be

16   unable to stand or walk for the number of hours found by the ALJ, and made it

17   impossible for plaintiff to put full weight on the joints in his foot. *See, e.g.,* AR 416–417

18

19   _____

20   [2] The measures to prevent recurrence of foot ulcers were of great importance; the record shows
     that plaintiff ultimately did experience another foot ulcer, and in December 2021 his toe required
21   amputation due to the ulcer becoming infected. AR 2200, 2204, 2216, 2223, 2243–46. The
     defendant suggests that plaintiff would have been able to work, but he was not able to comply
22   with a safety requirement of wearing steel-toed boots. Dkt. 15, at 1–2. Yet the defendant also
     acknowledges the reason plaintiff was unable to wear work-protective footwear was due to the
23   need for specialized diabetic shoes to mitigate risk of injury and symptoms of diabetic
     neuropathy. Dkt. 15, at 5; AR 385, 851. Plaintiff testified that from 2016 through the date of the
     hearing before the ALJ, he was using a variety of specialized shoes, a scooter, and a boot, to
24   address recurring ulcers and to prevent further injury. AR 923–29.

25

1    (May 2017), AR 1525 (September 2018), AR 1517, 1519, 1543 (October and November

2    2021).

3         The ALJ failed to provide adequate reasons for not giving full weight to Dr.

4    Neitzel's opinions. Because the opinions of Dr. Neitzel regarding plaintiff's limitations in

5    standing and walking were not accounted for in the RFC, this error was not harmless.

6         c.   Emily Robinson, ARNP

7         In May 2016, ARNP Robinson completed an application for a disability parking

8    permit for plaintiff. *See* AR 627; *see also* AR 598. In the application, she checked a box

9    indicating plaintiff had a disability which severely limited his walking abilities that would

10   last for twelve months. AR 627.

11         Under the regulations applicable to this case, Ms. Robinson is classified as an

12   "other source," rather than an "acceptable medical source[]" who can provide medical

13   opinions. *See* 20 C.F.R. § 416.902(a), 416.927(a). "The ALJ may discount testimony

14   from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing

15   so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

16         The ALJ found Ms. Robinson's statement "to be inconsistent with the record,

17   unexplained, inadequately supported, and brief and conclusory." AR 860. As with the

18   opinion of Dr. Smith and ARNP Sales, the ALJ erred by "criticizing [the] opinion with

19   boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*,

20   759 F.3d at 1012–13. With respect to the purported inconsistency with the record, the

21   ALJ explained that "the claimant is not severely limited in his walking, so the box that is

22   checked is inconsistent with the record." *Id.* As discussed above, the ALJ did not

23

24

25

adequately explain his finding that plaintiff was not severely limited in his walking abilities.

The ALJ failed to state adequate reasons to discount Ms. Robinson's statement.

d.   Raheela Sadiq, MD

In July 2016, treating wound care physician Dr. Sadiq completed paperwork for plaintiff to take short term disability leave. *See* AR 348, 434. The ALJ wrote that "Dr. Sadiq's exact short-term disability opinions are missing from the record. However, given that they are only short term, Dr. Sadiq's opinions are given limited weight as the record does support ongoing impairments, but also supports the residual functional capacity set out above." AR 861.

Plaintiff argues only that "the ALJ did not state any legitimate reason for rejecting Dr. Sadiq's opinion that [plaintiff] would need to be able 'to offload his foot as is needed' and would need time off work to 'help make all his appointments that he needs.'" Dkt. 11 at 8 (citing AR 348). But the ALJ stated that Dr. Sadiq, when rendering an opinion, did not opine limitations based on long-term impairments. This is a legitimate reason to not include those limitations in the RFC. *See* 20 C.F.R. § 404.1509 (requiring that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months"). The ALJ did not err in discounting Dr. Sadiq's 2016 opinion.

e.   State Agency Consultants

Plaintiff argues the ALJ improperly adopted the opinion of a state agency consultant who opined plaintiff could stand or walk for four hours in a regular workday. Dkt. 11 at 14. Plaintiff only states the "opinion is contrary to the longitudinal evidence, and is entitled to no weight." *Id.* Plaintiff also argues "the ALJ improperly rejected the

March 2017 opinions of [two state agency consultants who opined] that [plaintiff's]

impairments met Listing 11.14B." Dkt. 11 at 14.

But plaintiff has presented no argument demonstrating the ALJ improperly

evaluated whether plaintiff's impairments met or equaled a listing at step three.

Plaintiff's conclusory assertions are insufficient to meet this burden. See *Independent*

*Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). And, having

determined that the ALJ harmfully erred in evaluating the medical opinions of Dr. Smith

and ARNP Sales and Dr. Neitzel, the Court need not consider these arguments.

f.   William Biles, MD, and Wil Nelp, MD

Plaintiff argues the ALJ improperly gave substantial weight to the testimony of

nonexamining medical advisors Dr. Nelp and Dr. Biles. Dkt. 11 at 13–14. With respect

to Dr. Nelp's opinion, plaintiff argues that "Dr. Nelp's analysis included many significant

factual errors" and therefore was not entitled to great weight. Dkt. 11 at 13.

With respect to Dr. Biles' opinion, plaintiff argues "Dr. Biles should be disqualified

because he did not reveal in his resume that his medical license had been placed on

probationary status in 2018 for providing substandard treatment to patients with similar

impairments to [plaintiff]." Dkt. 11 at 14.

Having determined that the ALJ harmfully erred in evaluating the medical

opinions of Dr. Smith and ARNP Sales and Dr. Neitzel, the Court need not consider

these arguments.

**3.  Lay witness evidence**

Plaintiff argues the ALJ erred in his assessment of the lay witness statement of

plaintiff's fiancé. Dkt. 11 at 17–18. Plaintiff's fiancé submitted a lay witness statement in

1   January 2022 describing plaintiff's medical history and his condition. AR 1289. In the

2   statement, she said plaintiff required assistance for basic household tasks, was unable

3   to go upstairs, and he avoids walking around the house due to his history of ulcers. *Id*.

4       When evaluating opinions from non-acceptable medical sources such as a

5   therapist or a family member, an ALJ may expressly disregard such lay testimony if the

6   ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc.*

7   *Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511

8   (9th Cir. 2001).

9       Here, the ALJ gave the statement little weight because it was a "lay opinion[]

10  based upon casual observation, rather than objective medical evidence." AR 862. A

11  "lack of support from medical records is not a germane reason" to reject lay witness

12  testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Indeed, "the fact that

13  lay testimony and third-party function reports may offer a different perspective than

14  medical records alone is precisely why such evidence is valuable at a hearing." *Id*.

15  Similarly, that the opinion was based on casual observation is not a germane reason for

16  rejecting the opinion but, rather, such observations are competent testimony. *See*

17  *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993) ("[F]riends and family members in

18  a position to observe a claimant's symptoms and daily activities are competent to testify

19  as to her condition.").

20      Defendant argues any error with respect to the ALJ's assessment of the

21  statement was harmless because it "mirrors plaintiff's subjective complaints." Dkt. 15 at

22  15. Where an ALJ has provided clear and convincing reasons to discount a claimant's

23  testimony, those reasons are germane reasons for rejecting similar lay witness

24

25

testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here, however, the Court has determined that the ALJ did not provide clear and convincing reasons for discounting plaintiff's subjective testimony.

Thus, the ALJ failed to provide germane reasons for rejecting the statement of plaintiff's fiancé.

### 4. **RFC**

The ALJ's decision assessing plaintiff's RFC and step five finding were not supported by substantial evidence because they did not include the limitations opined by Dr. Smith, ARNP Sales, Ms. Robinson, and Dr. Neitzel, and those described by plaintiff himself, and plaintiff's fiancé who was also his caregiver. Because the Court has found in plaintiff's favor that the errors were not harmless, and the hypotheticals posed by the ALJ to the Vocational Expert did not include all relevant limitations, the RFC was erroneous. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational expert failed to include all the claimant's impairments).

### 5. **Whether the Court should reverse with a direction to award benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

1    the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

2    at 668.

3           The Ninth Circuit has developed a three-step analysis for determining when to

4    remand for a direct award of benefits. Such remand is generally proper only where

5                     "(1) the record has been fully developed and further administrative
                      proceedings would serve no useful purpose; (2) the ALJ has failed
6                     to provide legally sufficient reasons for rejecting evidence, whether
                      claimant testimony or medical opinion; and (3) if the improperly
7                     discredited evidence were credited as true, the ALJ would be
                      required to find the claimant disabled on remand."

8    *Trevizo*, 871 F.3d at 682–83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

9    2014)). The Ninth Circuit emphasized in *Leon* that even when each element is satisfied,

10   the district court still has discretion to remand for further proceedings or for award of

11   benefits. *Leon*, 80 F.3d at 1045. If remand for additional proceedings would not serve a

12   purpose, and a finding of non-disability would not be supported by substantial evidence,

13   the Court should remand for an award of benefits. *Compare, Garrison v. Colvin*, 759

14   F.3d at 1020–1023 (when credit-as-true factors are met, and there is no serious doubt

15   whether the plaintiff meets the criteria for disability, remand for purposes of allowing the

16   ALJ to have a "mulligan" is not a useful purpose); with *Dominguez v. Colvin*, 808 F.3d

17   403, 409–10 (9th Cir. 2015) (as amended) (citing *Luna v. Astrue*, 623 F.3d 1032, 1035

18   (9th Cir.2010) (if significant factual issues are outstanding, remand for additional

19   proceedings is the appropriate remedy).

20          The Court concludes that the record is free from important and relevant conflicts,

21   and remand for a new hearing would not serve a useful purpose. The errors of the ALJ

22   were harmful, and there is no need for additional evidence to clarify the nature of

23   plaintiff's symptoms or work-related limitations during the relevant period. The

24

25

Commissioner has conducted two hearings and considered plaintiff's testimony from 2018 and 2022, and medical information from 2016 through 2022, and there was a stipulated remand in 2021.

Applying the credit-as-true rule, if the Court credits plaintiff's testimony and his fiancé's statement as true, and credits the opinions of Dr. Smith, ARNP Sales, Ms. Robinson, and Dr. Neitzel; the only result possible would be a finding of disability. *See,* AR 942–945 (Vocational Expert testifies that there would not be any work available for a person who required extra breaks, would be off-task more than 10% of the time, or who could not stand or walk for more than fifteen minutes, or who could stand and walk less than two hours in an eight-hour day).

Therefore, this matter should be reversed with a direction to award benefits.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. The ALJ's decision is reversed and remanded for an award of benefits.

Dated this 17th day of April 2024.

Theresa L. Fricke
United States Magistrate Judge